UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BLST Northstar, LLC, and<br>BLST Receivables & Servicing, LLC, | Civ. No. 22-2210 (PAM/DJF) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Santander Consumer USA, Inc., | |
| Defendant. | |

This matter is before the Court on Defendant Santander Consumer USA, Inc.'s Motion for Summary Judgment. (Docket No. 101.) For the following reasons, the Motion is granted.

**BACKGROUND**

This lawsuit is a contract dispute between Plaintiffs BLST Northstar, LLC and BLST Receivables & Servicing, LLC (collectively "Bluestem"), an online and mail-order retailer, and Santander Consumer, USA, Inc. ("SCUSA"), a financial institution. In April 2013, Bluestem and SCUSA began a program in which Bluestem's customers purchased goods through use of Bluestem credit cards, and Bluestem sold those credit-card debts—the receivables—to SCUSA. (Am. Compl. (Docket No. 68) ¶¶ 21–22.) Two agreements govern this relationship, the Program Agreement (Mitcham Decl. Ex. 1 (Docket No. 115) "PA") and the Standard Receivables Sales Agreement (id. Ex. 2 (Docket No. 115-2) "SRSA").

Subsequently, SCUSA decided to exit the credit-card business and discussed selling the receivables back to Bluestem, but ultimately did not do so, as Bluestem declared bankruptcy in 2020. (Am. Compl. ¶ 1; Pls.' Mem. in Opp'n (Docket No. 137) at 12.)

In March 2021, SCUSA sold the receivables to BB Allium, LLC, an entity controlled by Castlelake ("the Castlelake Transaction"). (Id. ¶ 35; Mitcham Decl. Ex. 8 (115-8).) The following month, SCUSA notified Bluestem that it would not renew the PA, which was set to expire in April 2022. (Am. Compl. ¶¶ 21, 34.) Bluestem thereafter requested information from SCUSA, including the terms of the Castlelake Transaction and other information related to selling the receivables, which SCUSA provided. (Mitcham Decl. Exs. 9, 10, 13–19 (Docket Nos. 115-9, 115-10, 115-13–19).)[1]

This lawsuit followed in September 2022. Bluestem brings three claims: a breach of contract claim, a violation of the Defend Trade Secrets Act, and a breach of the implied covenant of good faith and fair dealing. SCUSA now moves for summary judgment as to all of Bluestem's claims.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Tolan v. Cotton, 572 U.S.

---

[1] Additional facts necessary to the Court's analysis are set forth below.

650, 660 (2014). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A dispute is genuine if the evidence could cause a reasonable jury to return a verdict for the nonmoving party. Id. at 248.

**A.     Breach-of-Contract Claim**

"[A] breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011) (citation omitted); see Espenschied Transp. Corp. v. Fleetwood Servs., Inc., 422 P.3d 829, 833 (Utah 2018). "In interpreting a contract, . . . [w]ords and phrases are given their plain meaning. Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement." Am. Exp. Bank Ltd. v. Uniroyal, Inc., 164 A.D.2d 275, 277 (N.Y. App. Div. 1990) (internal citations omitted); see WebBank v. Am. Gen. Annuity Serv. Corp., 54 P.3d 1139, 1145 (Utah 2002) (quoting Cent. Fla. Invs., Inc. v. Parkwest Assocs., 40 P.3d 599, 605 (Utah 2002) ("If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law.")).

Bluestem alleges that it had a "right of first refusal to buy back the receivables owned by SCUSA in the event of non-renewal, such that SCUSA could not sell those

3

receivables to a third party on equal or less favorable terms that offered by Bluestem." (Am. Compl. ¶ 62.) But this alleged "right of first refusal" is not mentioned in the parties' agreements. This may be why Bluestem now argues that it was the parties' "intent" that Bluestem could buy back the receivables before they could be sold to third parties.

SCUSA argues that the breach-of-contract claim fails as a matter of law because it exercised its express contractual right to sell the receivables. Indeed, the SRSA is clear that SCUSA owns the receivables and is "entitled to all of the rights, privileges, and remedies applicable to said ownership interest, including the right to pledge, transfer, sell, assign, exchange, or collect and receive payments . . . ." (SRSA § 3(a)(i).) This section further grants SCUSA "the right to enter into a Loan or Securitization that complies with Sections 3(f) and (g)." (Id.) Notably, Bluestem does not reference § 3(a)(i) in its memorandum opposing summary judgment. Rather, Bluestem argues that SCUSA breached other aspects of the parties' agreement in selling the receivables.

Bluestem first contends that SCUSA breached the agreements by preventing Bluestem from presenting a bid to repurchase the receivables in the first instance. But the agreements state that Bluestem's right to "present a bid" only arises in the event that SCUSA "delivers a notice of termination of the Program Agreement . . . or a Non-Renewal Notice." (SRSA Ex. A. § (a); PA Ex. Q § (a).) There is no dispute that the Castlelake Transaction occurred before SCUSA delivered such a non-renewal notice. (Am. Compl. ¶¶ 7–8, 24.) Bluestem does not reference any explicit contractual provision indicating a right of first refusal or a restriction on SCUSA's right to sell the receivables before indicating to Bluestem that it would not renew the agreements. (See SRSA Ex. A.

4

§ (a); PA Ex. Q § (a).) Even so, the right to present a bid to purchase the receivables is distinct from the right to purchase them. And the agreements state that "SCUSA shall have no obligation to sell the Receivables Package to [Bluestem] or its Nominated Purchaser," meaning that the bid process was not intended to be binding. (SRSA Ex. A. § (b); PA Ex. Q § (b).)

Bluestem's reliance on parol evidence to establish the parties' intent contrary to the agreements' plain language is in vain. The SRSA explicitly states that "the Program Documents . . . supersede any prior or contemporaneous negotiations . . . with regard to the same subject matter." (SRSA § 24.) As a result, any pre-agreement discussions are irrelevant to the parties' rights and obligations under the agreements. Further, the agreements are not ambiguous and do not require extrinsic evidence to determine their meaning. See Tangren Fam. Tr. v. Tangren, 182 P.3d 326, 330 (Utah 2008) (quoting Hall v. Process Instruments & Control, Inc., 890 P.2d 1024, 1026 (Utah 1995) ("[I]f a contract is integrated, parol evidence is admissible only to clarify ambiguous terms; it is 'not admissible to vary or contradict the clear and unambiguous terms of the contract.'")); Intercontinental Plan., Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 379 (N.Y. 1969) ("[I]t is . . . well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.").

Second, Bluestem argues that § 3(g) restricted SCUSA's ability to sell the receivables. In relevant part, § 3(g) states that:

> SCUSA shall use its reasonable best efforts not to structure any Loan or Securitization or otherwise encumber the Purchased Receivables . . . in

5

> such a way that . . . if SCUSA [accepts a Bluestem bid, Bluestem's] rights to purchase all of such related Program Assets . . . would be encumbered, impaired or delayed.

(Pls.' Mem. in Opp'n at 35 (quoting SRSA § 3(g)(i)).) Bluestem contends that the parties' use of "encumber" in § 3(g)(i) suggests "the parties plainly intended a broader definition, like 'impede or hinder,' 'make it difficult for someone to do something,' or 'weight down, burden." (Id. at 36 (footnotes omitted).) However, § 3(a)(i) of the SRSA explicitly grants SCUSA the right to "transfer, sell, [or] assign" the receivables. (SRSA § 3(a)(1).) Moreover, Bluestem's view overlooks that § 3(g) is an exception to § 3(f), which concerns loans and securitizations. Therefore, § 3(g) of the SRSA does not restrict sales, and there is no dispute that the Castlelake Transaction was not a loan or securitization, such that this exception would apply.

Third, Bluestem contends that § 11 of the SRSA prohibits assignment of the receivables. To the contrary, § 11 states that it "shall not restrict SCUSA's ability to transfer the Purchased Receivables or its rights and obligations under this Agreement or implement a Loan or Securitization, subject to Section 3(f)." (Id. § 11.)

Fourth, Bluestem argues that SCUSA failed to "cooperate in effectuating [a] repurchase by Bluestem" and "provide all information about the assets that Bluestem reasonably sought." (Am. Compl. ¶¶ 36, 37.) However, SCUSA's contractual obligations to provide such information arise only if SCUSA accepts Bluestem's bid to repurchase the receivables, which did not occur here. (SRSA Ex. A §§ (a)–(e); PA Ex. Q §§ (a)–(e).) The Court is likewise unpersuaded by Bluestem's argument that SCUSA failed to reasonably cooperate with the transfer of the receivables, including relevant

6

information relating to the transfer. Again, SCUSA's duty to transfer information to Bluestem only arose if SCUSA accepted a bid from Bluestem, which did not occur.

Bluestem has not raised a material fact in dispute regarding its breach-of-contract claim, and SCUSA's Motion is granted as to this claim.

**B.    Defendant Trade Secrets Act Claim**

Bluestem alleges that SCUSA violated the Defend Trade Secrets Act ("DTSA") by impermissibly providing Bluestem's trade secrets, financial information, and other Bluestem information to Castlelake and others related to the Castlelake Transaction. (Am. Compl. ¶¶ 45, 48–49.) The Defend Trade Secrets Act creates a private cause of action for the "owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). A trade secret includes:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
>> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>>
>> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

Id. § 1839(3). Under the DTSA, "misappropriation" includes "disclosure or use of a trade secret of another without express or implied consent . . . us[ing] improper means to

acquire knowledge of the trade secret."  Id. § 1893(5)(B)(i).  "'[I]mproper means' includes . . . breach or inducement of a breach of a duty to maintain secrecy."  Id. § 1893(6)(A).  Here, Bluestem alleges that "SCUSA misappropriated [Bluestem's] trade secrets, by use of improper and unlawful means, in breach of an express promise of confidentiality to Bluestem."  (Am. Compl. ¶ 58.)

Bluestem's DTSA claim fails as a matter of law because it is based on SCUSA's alleged breach of the agreements' confidentiality provisions, which explicitly allowed for the disclosures.

Section 3(c)(xii) of the SRSA allowed SCUSA to provide a potential purchaser of the receivables with Bluestem's confidential information "as may reasonably be required . . . to evaluate its . . . purchase and investment, provided that such purchaser enters into a confidentiality agreement with SCUSA or the subsequent purchaser (if applicable) that is substantially similar to the confidentiality provisions in this Agreement."  (SRSA § 3(c)(xii).)  SCUSA correctly argues that the records it disclosed to Castlelake fall squarely within that provision, and that there is no dispute that Castlelake was a "potential purchaser" of the receivables.

Bluestem contends SCUSA further breached the agreements by providing Castlelake with more than merely "data tape" information—"anonymized account balance information"—as the PA allows. (Pls.' Mem. in Opp'n at 8.)  Indeed, § 14 of the PA states that "[i]n the event that SCUSA has a right to sell the Purchased Receivables . . . SCUSA may . . . provide Data Tape Information to a potential purchaser . . . of such Receivables . . . as may reasonably be required by such purchaser

8

or lender to evaluate such purchase or loan," so long as SCUSA entered into a confidentially agreement with that the potential purchaser, among other requirements. (PA § 14(a).) It is undisputed that SCUSA and Castlelake entered into a confidentiality agreement. (Mitcham Decl. Exs. 3–5 (Docket Nos. 115-3–5).) As SCUSA maintains, this clause is permissive. Contrary to Bluestem's assertions, the PA does not say that SCUSA may "only" share data tape information. (Am. Compl. ¶ 47.) Indeed, the PA allowed for disclosure of additional information: "In the event that SCUSA has a right to sell the Purchased Receivables . . . the Parties acknowledge that SCUSA may provide related Borrower information to a potential purchaser . . . of such Receivables . . . as may reasonably be required by such a purchaser . . . to evaluate such purchase," provided that SCUSA abides by some restrictions, including that the potential purchaser must sign a confidentially agreement. (PA § 11(c)(3).)

Bluestem again attempts to rely on extrinsic evidence of SCUSA's conduct to demonstrate breach, but because the contracts are not ambiguous, the Court cannot consider that evidence.

Bluestem lastly argues that because some of the documents that SCUSA shared with Castlelake may have been unnecessary to effectuate the sale, the Court must review each document to determine whether a breach occurred. However, even if SCUSA provided extraneous documents to Castlelake, Bluestem fails to identify any resulting damages, which are required for the claim to proceed. See Phyllis Schlafly Revocable Tr. v. Cori, No. 4:16CV01631 JAR, 2016 WL 6611133, at *2 (E.D. Mo. Nov. 9, 2016) ("In order to prevail on a claim for misappropriation of a trade secret, a plaintiff must

show: (1) the existence of a protectable trade secret; (2) misappropriation of those trade secrets by the defendant; and (3) damages.").

Bluestem fails to point to any material fact in dispute. SCUSA's Motion is granted as to the DTSA claim.

### C.   Breach-of-Good-Faith-and-Fair-Dealing Claim

Bluestem further alleges that SCUSA breached the implied covenant of good faith and fair dealing by depriving Bluestem of its rights under the contracts. (Am. Compl. ¶¶ 68–76.) "A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is 'intrinsically tied to the damages allegedly resulting from a breach of the contract.'" Deer Park Enters., LLC v. Ail Sys., Inc., 57 N.Y.S.2d 89, 90 (N.Y. App. Div. 2008) (quoting Canstar v. J.A. Jones Const. Co., 622 N.Y.S.2d 730, 731 (N.Y. App. Div. 1995); see Canopy Corp. v. Symantec Corp., 395 F. Supp. 2d 1103, 1111 (D. Utah 2005) ("To state a separate claim, [Plaintiff] must demonstrate some implied promise separate from a breach of the Agreement's term provision that could support this cause of action."). Bluestem alleges that SCUSA acted in bad faith but fails to demonstrate that SCUSA was not merely exercising its express rights under the agreements. Therefore, SCUSA's Motion is granted as to this claim as well.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant SCUSA's Motion for Summary Judgment (Docket No. 101) is **GRANTED**;

2. Defendant SCUSA's Motions to Exclude Expert Testimony (Docket Nos. 118, 128) are **DENIED as moot**; and

3. This matter is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 21, 2024

*s/Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge